UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THYSSENKRUPP MATERIALS, LLC,

      Plaintiff,

Case No. 20-cv-11087
Hon. Matthew F. Leitman

v.

TRIUMPH GROUP, INC., *et al.*,

      Defendant

_____/

## ORDER (1) DENYING DEFENDANTS' MOTION TO VACATE ARBITRATION AWARD (ECF No. 14); AND (2) GRANTING PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD (ECF No. 12)

On May 4, 2020, Plaintiff thyssenkrupp Materials, LLC ("TK") filed this civil action against Defendant Triumph Aerostructures, LLC ("TAS") and its parent corporation, Triumph Group, Inc. ("TGI").  TK alleged that TGI and TAS were jointly and severally liable for breach of contract and breach of implied contract. The parties subsequently stipulated to submit TK's claims to binding arbitration. They further agreed that the Arbitrator would issue an unreasoned award.  The Arbitrator thereafter held a five-day evidentiary hearing during which the parties presented live testimony from several witnesses and introduced nearly 100 exhibits.

After hearing final arguments from the parties, the Arbitrator ruled in favor of TK.  In his unreasoned award, the Arbitrator determined that TGI and TAS were

jointly and severally liable to TK for approximately $2.9 million in damages.  He also directed TK to deliver to TGI and TAS certain aluminum that TK had acquired on their behalf during the parties' relationship, and he required TGI and TAS to accept delivery of that aluminum from TK.

TK has now moved to confirm the arbitration award and for pre-judgment interest (ECF No. 12), and TGI and TAS have moved to vacate the award (ECF No. 14).  In the motion to vacate, TGI and TAS have raised a number of reasonable questions regarding whether the Arbitrator erred in holding them jointly and severally liable for damages.  For instance, TGI and TAS have offered some evidence that there was only one operative contract, that the contract was between TK and TAS only, and that there was therefore no basis for the Arbitrator to hold TGI jointly liable with TAS for breach of contract.

But raising reasonable questions about the correctness of an arbitration award is not enough to warrant its vacatur.  On the contrary (and as TGI and TAS rightly acknowledge), TGI and TAS must show that the Arbitrator manifestly disregarded the law.  To make that showing, the losing parties in an arbitration must ordinarily establish that the arbitrator's award flew in the face of clearly established precedent. And where, as here, an award is unreasoned, the losing parties must make an even higher showing to establish a manifest disregard for the law: They must show that there was no conceivable rational basis for the award.

2

TGI and TAS have failed to carry their heavy burden.  As explained below, the Arbitrator could have concluded that TK, TGI, and TAS entered into a contract through their conduct, that TGI and TAS breached that contract, and that TGI and TAS are therefore jointly and severally liable for that breach.  TGI and TAS have not shown that these conclusions would have been precluded by clearly established precedent or that they would have been irrational.  For these reasons, the Court cannot vacate the award and must confirm it.  Therefore, the Court **GRANTS** TK's motion to confirm the award, **DENIES** TGI's and TAS's motion to vacate the award, and **CONFIRMS** the award.  However, the Court **DENIES** TK's request for pre-judgment interest on the award.

## I

## A

TGI is a holding company whose subsidiaries manufacture aerospace products. (*See* Compl. at ¶¶ 15-16, ECF No. 1, PageID.5.)  TAS is one TGI's subsidiaries. (*See id.* at ¶ 10, PageID.3.)  TAS and TGI's other subsidiaries use aluminum in their production processes.

TK is a distributor of production materials, including aluminum. (*See id.* at ¶ 19, PageID.6.)

3

**B**

According to TK, it is a party to certain "agreements" with TGI and TAS concerning the procurement and storage of aluminum. (Compl. at ¶ 20, ECF No. 1, PageID. 6.[1]) These agreements "include" terms found in a "Long Term Agreement Purchase Order 101-120099-AZ," as amended from time to time (the "LTA").[2] (*Id.* at ¶ 20, PageID.6.)

TK alleges the parties' relationship under these agreements was as follows: (1) TGI and TAS would order large quantities of aluminum products from an aluminum mill in anticipation of their production needs, leveraging their volume purchasing to obtain favorable prices; and then (2) TK would "acquire[], warehouse[], and maintain[]" these aluminum products on behalf of TGI and TAS until they were needed by TGI and TAS (or their customers). (*Id.* at ¶ 27-28, PageID.8.)  In other words, TGI and TAS would negotiate, with the aluminum mill, the prices and quantities of aluminum to be acquired by TK; TK would purchase the

---

[1] In the paragraph of the Complaint cited above and elsewhere throughout the Complaint and TK's submissions to this Court and to the Arbitrator, TK used the defined term "Triumph."  TK defined that term to include *both* TGI and TAS. (*See* Compl., ECF No. 1, PageID.1.)

[2] The LTA is dated April 23, 2003. (*See* Compl. at ¶ 21, ECF No. 1, PageID.6.)  The original parties to the LTA were Alcoa, Inc. and Vought Aircraft Industries, Inc. (*See id.*)  TK alleges that it became the successor to Alcoa, Inc., and TGI and TAS became successors to Vought Aircraft Industries, Inc. (*See id.* at ¶¶ 22-23, PageID.6-7.)  TK further alleges that there were "a series of written amendments to the [LTA]," with the latest dated November 2017. (*Id.* at ¶ 24, PageID.7.)  The LTA lapsed on December 31, 2020. (*See* Mot. to Vacate, ECF No. 14, PageID.518.)

aluminum at the prices and quantities negotiated by TGI and TAS; and TK would store the aluminum until TGI and TAS needed it.  TK would then deliver the aluminum to TGI and TAS, and TGI and TAS would pay TK for the aluminum.

Occasionally, TGI and TAS did not need all of the aluminum that TK had acquired for them on a particular project. (*See id.* at ¶ 29, PageID.8.)  In some instances, this excess aluminum could not be used on other projects due to its specialized nature, and it thus became obsolete as it sat in TK's storage facilities (the "Obsolete Aluminum"). (*See id.*)  TK says that the parties' agreements required TGI and TAS to repurchase the Obsolete Aluminum from TK. (*See id.* at ¶ 30, PageID.8.)  TK further contends that in 2019, TGI and TAS breached their contractual obligations to repurchase from TK millions of dollars' worth of Obsolete Aluminum. (*See id.* at ¶¶ 39-41, PageID.11.)

## C

On May 4, 2020, TK filed this civil action against TGI and TAS. (*See* Compl., ECF No. 1.)  The action arises out of the refusal by TGI and TAS to repurchase the Obsolete Aluminum in 2019. (*See id.* at ¶¶ 39-41, PageID.11.)  TK asserted three claims in its Complaint.  First, TK asserted a breach of contract claim against TGI and TAS.  In that claim, TK alleged that both TGI and TAS were "parties to agreements" with TK and that those agreements required TGI and TAS to repurchase Obsolete Aluminum. (*See id.* at ¶¶ 45-49, PageID.12.)  TK contended that TGI and

5

TAS breached those agreements by refusing to repurchase the Obsolete Aluminum in 2019. (*See id.* at ¶¶ 49-51.)  And TK alleged that both TGI and TAS were "jointly and severally" liable for the alleged breaches of contract. (*See id.*, PageID.13.)  TK sought damages in the amount of $3,623,612 from TGI and TAS. (*See id.*)

"[I]n the alternative and/or in addition" to its claim for breach of contract, TK also brought a claim for breach of implied contract against both TGI and TAS. (*See id.* at ¶ 52-55, PageID.13.)  TK again alleged that both TGI and TAS were "jointly and severally" liable for at least $3,623,612 in damages. (*See id.*, PageID.13-14.)[3]

## D

Before TGI and TAS responded to the Complaint, the parties agreed to submit TK's claims to arbitration.  On June 22, 2020, this Court entered a stipulated order reflecting this agreement (the "Stipulated Arbitration Order"). (Stip. Arb. Order, ECF No. 10.)  The Stipulated Arbitration Order, in part, provided as follows:

> 2. Subject to the terms of the Federal Arbitration Act, 9 U.S.C. 1 et seq, Plaintiff and Defendants have agreed to submit this dispute to final and binding arbitration before the American Arbitration Association ("AAA") and agree

---

[3] TK also brought a third count for a declaratory judgment. (*See* Compl. at ¶¶ 56-64, ECF No. 1, PageID.14-15.)   In this Count, TK alleged that TGI and TAS "maintain[ed] that the claims in this civil action are subject to an agreement concerning arbitration." (*Id.* at ¶ 59, PageID.14.)  TK stated that, in response to TGI and TAS's position, it filed an arbitration demand on April 30, 2020. (*See id.* at ¶ 60, PageID.14.)  However, TK alleged that TGI and TAS "ha[d] not yet agreed to arbitrate." (*Id.* at ¶ 61, PageID.14.)   It thus requested the Court stay these proceedings and compel the parties to arbitrate. (*See id.* at ¶ 63, PageID.15.)

that this Honorable Court will enter a final judgment in this civil action in accordance with the Arbitrator's award.

\* \* \*

**IT IS HEREBY ORDERED** that this matter is stayed pending the AAA arbitration and issuance of an award, or until further Order of this Court.

**IT IS FURTHER ORDERED** that this Honorable Court will enter a final judgment in this civil action in accordance with the Arbitrator's award, subject to the terms of the Federal Arbitration Act, 9 U.S.C. 1 et seq.

(*Id.*, PageID.31-32.)

### E

The parties commenced arbitration proceedings in the summer of 2020. (*See* Mot. to Confirm, ECF No. 12, PageID.38.)  On August 7, 2020, the Arbitrator issued a "Scheduling Order" in which he laid out the arbitration schedule to which the parties had agreed. (*See* Scheduling Order, ECF No. 12-9.)  The Scheduling Order provided for, among other things, document discovery, depositions, pre-hearing briefing, and a five-day arbitration hearing. (*See id.*, PageID.351-352.)   The Scheduling Order noted the parties' agreement that any award would be unreasoned: "[t]he parties have requested a Naked Award, rather than a Reasoned Award or Findings and Fact and Conclusions of Law." (*Id.*, PageID.352.)

In accordance with the Scheduling Order, TK filed a Supplemental Statement of Claim on August 28, 2020. (*See* Mot. to Confirm, ECF No. 12, PageID.39.)  TGI and TAS filed a Supplemental Answer on September 18, 2020. (*See id.*)  The parties

then conducted discovery and "exchanged over 36,000 pages of documents and electronic files." (Supp'l Resp., ECF No. 23, PageID.889.)  On March 29, 2021, the parties filed their pre-hearing arbitration briefs. (*See* Mot. to Confirm, ECF No. 12, PageID.39.)

The Arbitrator conducted a five-day arbitration hearing beginning on April 5, 2021. (*See* Resp., ECF No. 16, PageID.560.)  The parties presented an extensive evidentiary record to the Arbitrator.  This record "include[d] testimonial Declarations from six witnesses, four of whom testified live and two of whom testified by videotaped testimony" and "approximately 94 documents which were admitted into evidence." (First Interim Award, ECF No. 16-3, PageID.586.)  The parties presented closing arguments on April 9, 2021. (*See id.*)

On April 16, 2021, the Arbitrator issued his first award (the "First Interim Award"). (*See* First Interim Award, ECF No. 16-3.)  The First Interim Award describes the Arbitrator's ruling as follows:

> A. <u>Monetary Damages</u>
>
> Monetary award in favor of [TK] and against Respondents, [TGI] and [TAS], jointly and severally in the amount of $2,878,831.17. This figure is derived from the middle column of [TK's] demonstrative exhibit, and includes all deductions shown, except for Item 26.
>
> B. <u>Specific Performance</u>
>
> [TK's] request for specific performance is GRANTED against [TGI and TAS], jointly and severally. [TGI and TAS] shall, within 30 calendar days of the date of this

8

Award and in a manner consistent with ¶ 7 of the parties' Long Term Agreement ("Section 7: Delivery, Title and Risk of Loss"), accept delivery from [TK] of all of the inventory reflected on [TK's] Exhibits C-3 and C-4, FOB the [TGI and TAS's] facility/receiving dock.

I retain jurisdiction for the sole and limited purpose of enforcing the specific performance aspect of this Interim Award and for no other purpose.

The administrative fees and expenses of the American Arbitration Association totaling $20,675.00 shall be borne equally, and the compensation and expenses of the arbitrator totaling $26,370.00 shall be borne equally. Therefore, [TGI] and [TAS] shall pay [TK], an additional amount of $8,087.50.

For all purposes other than the limited retention of jurisdiction to enforce the specific performance aspect of this Interim Award, this Interim Award disposes of all claims and defenses raised by the parties. Any claims or defenses not expressly referenced herein are, hereby, denied.

(*Id.*, PageID.586-587.)

As the First Interim Award indicates, the Arbitrator awarded TK two distinct types of relief. First, he awarded TK $2,878,831.17 in monetary damages, and he determined that TGI and TAS were jointly and severally liable for those damages (the "Damages Component"). Second, he addressed what to do with the Obsolete Aluminum. To that end, he directed TK to deliver the Obsolete Aluminum to TGI and TAS, and he directed TGI and TAS to accept delivery thereof (the "Delivery Component"). Because the parties stipulated to an unreasoned award, the Arbitrator did not offer any explanation for the legal bases for either of these components.

On May 7, 2021, TK filed a motion with the Arbitrator claiming that TGI and TAS had violated the terms of the Delivery Component by failing to identify a location to which TK could ship the Obsolete Aluminum. (*See* Second Interim Award, ECF No. 17-3, PageID.702.)  TK sought a supplemental award compelling TGI and TAS to provide that information. (*See id.*)  In a response filed on May 11, 2021, TGI and TAS conceded that they had not provided the information requested by TK, but they argued that they should not be required to do so at that time. (*See id.*, PageID.702, 705.)  They also moved for a stay of the Delivery Component pending the resolution of their motion to vacate – which they had at that point recently filed in this Court – and any subsequent appeals. (*See id.*, PageID.705.)

The Arbitrator ruled on TK's motion for a supplemental award and TGI and TAS's motion for a stay of the Delivery Component in a Second Interim Award that he issued on May 14, 2021. (*See* Second Interim Award, ECF No. 17-3.)  The Arbitrator ruled in TK's favor on both issues.  First, he directed TGI and TAS to accept delivery of the Obsolete Inventory at a location they had identified in Florida. (*See id.*, PageID.705.)  Second, he declined to stay the Delivery Component. (*See id.*)  The Arbitrator added that he "continue[d] to retain jurisdiction for the sole and limited purpose of enforcing the specific performance provisions" of the First and Second Interim Awards (such as the Delivery Component). (*Id.*)

After the Arbitrator issued the Second Interim Award, TK filed another motion claiming that TGI and TAS had refused to provide the contact and scheduling information needed to facilitate TK's delivery of the Obsolete Aluminum to TGI and TAS at the designated location in Florida. (*See* Final Award, ECF No. 18-1, PageID.737.)   TK sought an award declaring that TK "may deliver the [Obsolete Inventory] to [the Florida location] upon 12 hours' notice on whatever schedule it can arrange and/or sell the [Obsolete Aluminum] if [TGI and TAS] refuse delivery." (*See id.*)   TGI and TAS again responded by seeking a stay of the Arbitrator's awards pending final resolution of their motion to vacate. (*See id.*)   Additionally, TGI and TAS moved to clarify issues pertaining to the documentation accompanying the Obsolete Aluminum. (*See id.*).   Finally, TGI and TAS requested that the Arbitrator enter a Final Award. (*See id.*)

On June 4, 2021, the Arbitrator issued a Final Award in which, among other things, he granted TK's motion and largely denied TGI and TAS's motion. (*See id.*, PageID.737-738.)   The Arbitrator directed TGI and TAS to provide to TK the requested delivery information and to accept the Obsolete Aluminum. (*See id.*, PageID.740.)   The Final Award also "incorporated" the First Interim Award and Second Interim Award into the Final Award. (*Id.*, PageID.740.)   Upon issuing the Final Award, the Arbitrator no longer "reserve[d] jurisdiction over the matter." (*Id.*)

11

From this point forward, the Court will use the term "the Award" to refer to the Final Award, which incorporates both the First Interim Award, the Delivery and Damages Components contained therein, and the Second Interim Award.

**F**

TK has now filed a motion to confirm the Award.[4] (*See* Mot. to Confirm, ECF No. 12.)  TK also requests pre-judgment interest dating back to the filing of the Complaint, costs, and post-judgment interest. (*See id.*, PageID.48-53.)

In response, TGI and TAS have filed a motion to vacate the Award in its entirety.[5] (*See* Mot. to Vacate, ECF No. 14.)  TGI and TAS's arguments as to why the Award is invalid are set forth in detail below.  In addition to asking the Court to vacate the Award, TGI and TAS asked the Court to "stay enforcement or performance of the Award pending resolution of any future appeals." (*Id.*)[6]

_____

[4] TK filed its motion to confirm after the Arbitrator entered the First Interim Award and before the Arbitrator entered the Second Interim Award and the Final Award. TK later filed a notice notifying the Court that the Arbitrator had issued the Final Award. (*See* Notice, ECF No. 18.)  The Court treats the motion to confirm as seeking confirmation of the Final Award, which incorporates all of the previous awards entered by the Arbitrator.

[5] That same day, TGI and TAS also filed a brief response in opposition to TK's motion to confirm in which they "rel[ied] upon, and incorporate[d] herein by reference, their Motion to Vacate AAA Arbitration Award, filed simultaneously with th[eir] response." (TGI and TAS Resp., ECF No. 15, PageID.548.)

[6] Prior to the hearing on the motions, both parties filed several rounds of responsive and supplemental briefs.  TK filed a response in opposition to TGI's and TAS's motion to vacate on May 18, 2021. (*See* Resp., ECF No. 16.)  TGI and TAS filed a reply on May 25, 2021. (*See* Reply, ECF No. 17.)  TGI and TAS thereafter filed two

The Court heard oral argument on the parties' motions on November 16, 2021. At the conclusion of the hearing, the Court ordered TGI and TAS to submit a post-hearing brief explaining how, as a matter of law, the Arbitrator could not have found TGI and TAS jointly liable under a contract with TK. The Court then ordered TK to file a post-hearing brief responding to TGI's and TAS's brief. TGI and TAS submitted a post-hearing brief on November 23, 2021. (*See* Post-Hr'g Br., ECF No. 24.) TK filed its response on November 30, 2021. (*See* Post-Hr'g Resp., ECF No. 25.)[7]

## II

The parties stipulated that the Court's review would be pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. 1, *et. seq.* (*See* Stip. Arb. Order, ECF No. 10, PageID.31.) The FAA requires the Court to apply "one of the narrowest standards of judicial review in all of American jurisprudence." *Samaan v. Gen. Dynamics Land*

---

separate supplemental briefs concerning the Delivery Component, on September 7, 2021, and October 15, 2021, respectively. (*See* First Supp'l Br., ECF No. 21; Second Supp'l Br., ECF No. 22.) In short, TGI and TAS asserted the Delivery Component was also erroneous because the Obsolete Aluminum did not conform to contractual and industry-specific requirements. (*See id.*) On November 10, 2021, TK filed a supplemental response brief. (*See* Supp'l Resp. Br., ECF No. 23.)

[7] TGI and TAS filed a motion for leave to reply, along with their proposed reply, on December 7, 2021. (*See* Post-Hr'g Reply, ECF No. 26.) That motion is **GRANTED**.

*Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016). The FAA enumerates four limited

grounds upon which a court can vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The United States Court of Appeals for the Sixth Circuit has also recognized

an additional ground upon which an arbitration award may be vacated: "where the

arbitration award was made 'in manifest disregard of the law.'"[8] *Merrill Lynch,*

---

[8] The Sixth Circuit has noted that the Supreme Court's decision in *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008), raises a possible question about the continuing validity of the manifest disregard standard as a basis for vacating an arbitrator's award under the FAA. *See Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) ("Whether 'manifest disregard of the law' may still supply a basis for vacating an arbitrator's award as 'a judicially created supplement to the enumerated forms of FAA relief' after *Hall Street* is an open question."). However, the Sixth Circuit has not yet discarded that standard, and that court continues to apply it in unpublished decisions. *See, e.g., Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 393-94 (6th Cir. 2019). Unless and until the Sixth Circuit

*Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).  This is "a very narrow standard of review." *Id*.  Under this standard:

> A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent. When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.

*Id.* (internal citations omitted).  "[T]o find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (citing *M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 851 n.3 (6th Cir. 1996)).

In this case, the Court's review is even narrower because the Award is unreasoned.  The Sixth Circuit has explained that:

> Where, as here, the arbitrators decline to explain their resolution of certain questions of law, a party seeking to have the award set aside faces a tremendous obstacle. If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.

---

rejects its prior published decisions recognizing the validity of the manifest disregard standard, this Court will continue to apply that standard.

*Id.* at 421.  In applying this standard, the Sixth Circuit has declined to vacate a unreasoned award that was "likely" erroneous because the award was supported by "a conceivable rational basis." *Id.* at 422.  Simply put, as the Sixth Circuit has "stated time and again, the absence of a reasoned award makes it all but impossible to determine whether the arbitration panel acted in manifest disregard of the law." *Murray v. Citigroup Glob. Markets, Inc.*, 511 F. App'x 453, 455 (6th Cir. 2013).

## III

With these highly deferential legal standards in mind, the Court turns now to TGI's and TAS's motion to vacate.  As described above in Section (I)(E), the Award here consists of two distinct forms of relief: the Damages Component and the Delivery Component.  TGI and TAS have moved to vacate both components.  The Court addresses each separately below.

### A

### 1

TGI and TAS first contend that the Damages Component holding them jointly and severally liable should be vacated "because it demonstrates (i) a manifest disregard of the law and (ii) that the Arbitrator exceeded his powers under 9 U.S.C. § 10(a)(4) by acting in complete contravention of controlling legal principles." (Mot. to Vacate, ECF No. 14, PageID.512.)  More specifically, TGI and TAS argue that to the extent the Arbitrator held them jointly and severally liable for breach of contract,

he reached a "legally impossible conclusion." (*Id.*, PageID.523.)   Their theory proceeds as follows: (1) the LTA is the only governing contract here; (2) TAS and TK were the only parties to the LTA; (3) TAS's parent company, TGI, was not a party to the LTA; (4) under settled law, as a non-party to the LTA, TGI could not be liable for the alleged breach of the LTA by its subsidiary, TAS; and therefore (5) the Arbitrator manifestly disregarded the law by holding TGI and TAS jointly and severally liable for breach of contract damages.

The Court declines to disturb the Award on this ground because there is a "conceivable rational basis supporting the [Arbitrator's] decision" that TGI and TAS were jointly and severally liable for breach of contract. *Merrill Lynch,* 70 F.3d at 422.  From the outset, TK pleaded that it was party to a contract with *both* TGI and TAS. (*See* Compl. at ¶¶ 1, 46-47, ECF No. 1, PageID. 1-2, 12.[9])  TK further defined this contract as being comprised of *multiple* "agreements" (plural) that bound TGI, TAS, and TK. (*See id.* at ¶¶ 1, 20, 46-47, PageID.1-2, 6, 12.)  And TK alleged that the agreements were evidenced by the parties' "written words and undisputed actions in performing [their contractual duties]." (Arb. Demand, ECF No. 12-6, PageID.126.)  Next, TK alleged that "Defendants" – *i.e.*, TGI and TAS – "have breached the parties' contract." (Compl. at ¶ 51, ECF No. 1, PageID.12.)  Finally,

---

[9] At the cited paragraphs of the Complaint, TK alleged that it was party to a contract with "Triumph."  As discussed *supra* at n.1, TK defined "Triumph" as including both TGI and TAS.

TK presented evidence to the Arbitrator indicating that TK had direct dealings with *both* TGI and TAS – including, for example, eighty-nine pages of purchase orders between TGI and TK, on one hand, and between TGI and TAS, on the other hand. (*See* Purchase Orders, ECF No. 16-5.[10]) Based upon TK's allegations and evidence, the Arbitrator could have found that (1) by their conduct and words, TK, TAS, *and* TGI formed a contract that extended beyond the LTA, (2) TGI and TAS *both* breached that contract, and (3) TGI and TAS were therefore jointly and severally liable for the breach of contract damages resulting from their failure to repurchase the Obsolete Aluminum.[11]

This theory is not patently implausible as a matter of law because it finds at least some support in the New York Uniform Commercial Code ("NY UCC"), which

---

[10] The Court notes that the entire evidentiary record presented at arbitration is not before it now. However, TK attached the purchase orders identified above as Exhibit D to its response to TGI and TAS's motion to vacate (ECF No. 16) and represented at oral argument that they were presented to the Arbitrator. TGI and TAS have not disputed the authenticity of the purchase orders, nor have TGI and TAS disputed TK's assertion that the purchase orders were presented to the Arbitrator.

[11] The Court acknowledges that TK also included theories and allegations, in its pleadings here and briefs before the Arbitrator, that could be construed as inconsistent with the theory of liability discussed in the text above. For example, at times TK appeared to pursue a theory that TGI was a party to the LTA *itself*. (*See, e.g.,* Arb. Demand, ECF No. 12-6, PageID.123, referring to "the *parties'* Long-Term Agreement" and "*Triumph*['s]" – defined as TGI and TAS, collectively – obligations thereunder (emphases added).) However, all that is required under the Court's narrow review here is the presence of one theory that could provide some conceivable rational basis on which the Award could stand. For all the reasons explained in this Opinion and Order, the Court finds that the theory addressed in text above could conceivably have provided such a basis.

all parties concede govern the parties' relationship.  The NY UCC recognizes that under some circumstances, parties may enter into contracts through their conduct. For example, NY UCC § 2-204(1) states: "A contract for sale of goods may be made in any manner sufficient to show agreement, *including conduct by both parties which recognizes the existence of such a contract*." NY UCC § 2-204(1) (emphasis added). NY UCC § 2-207(3) likewise states that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract." NY UCC § 2-207(3). Courts applying New York law have held the same. *See Hornell Brewing Co. v. Spry*, 664 N.Y.S.2d 698, 701 (N.Y. Sup. Ct. 1997) (holding that "an enforceable contract existed between plaintiff and defendants based on the uncontroverted facts of their *conduct*. Under Article 2 of the Uniform Commercial Code, parties can form a contract through their *conduct* rather than merely through the exchange of communications constituting an offer and acceptance.") (emphases added); *see also Apex Oil Co. v. Vanguard Oil & Serv. Co. Inc.*, 760 F.2d 417, 422 (2d Cir. 1985) ("As the District Court correctly observed, the existence of a contract may be established through conduct of the parties recognizing the contract.").

For all of these reasons, the Court cannot conclude that it would have been irrational and/or directly contrary to controlling New York law for the Arbitrator to have found that (1) TGI, TAS, and TK – through their writings and conduct – entered

into a contract beyond the LTA and (2) TAS and TK and thereby became jointly and severally liable for the breach of that contract.  Thus, the Court cannot vacate the Award.

**2**

TGI and TAS offer several counterarguments, but none persuade the Court that the Award is not supported by a rational basis and/or that the Award flies in the face of clearly established precedent.

**a**

First, TGI and TAS insist that the Arbitrator could not have found a contract existed between TGI, TAS, and TK based on the parties' conduct because "course of conduct and/or course of performance cannot create a contract, particularly where there is a written agreement precluding such oral agreements." (*See* Post-Hr'g Reply, ECF No. 26, PageID.1104.)  According to TGI and TAS, "the [NY] UCC makes clear that course of performance and course of dealing should only be used to explain, supplement, or interpret an existing agreement rather than be used to create an entirely new agreement." (*See* Post-Hr'g Br., ECF No. 24, PageID.1072.)  TGI

20

and TAS cite two sections of the NY UCC that purportedly compel that conclusion: NY UCC §§ 1-303(d) & 2-202(a).[12]

TGI and TAS have failed to conclusively establish that these two sections of the NY UCC precluded the Arbitrator from concluding that TK, TAS, and TGI formed a contract through their conduct. These provisions appear to focus upon contract interpretation, not contract formation. And neither of them expressly provides that parties may not form a contract through their conduct. Moreover, TGI and TAS have not cited any controlling New York authority holding that under these NY UCC provisions, a court may not find that a contract was created through the parties' conduct. Nor have TGI and TAS cited any cases addressing the interplay, if any, between these provisions, on one hand, and NY UCC § 2-204(1), on the other

---

[12] Section 1-303(d) of the NY UCC provides:

> A course of performance or course of dealing between the parties or usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement. A usage of trade applicable in the place in which part of the performance under the agreement is to occur may be so utilized as to that part of the performance.

Section 2-202(a) of the NY UCC states that the final expression of the parties' agreement "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade . . . or by course of performance[.]"

hand, which, as described above, recognizes that contracts may be formed through the parties' conduct.  Under these circumstances, TGI and TAS's citations of these statutes does not establish that it would have been patently incorrect for the Arbitrator to have concluded that TK, TAS, and TGI formed a contract through their conduct.

### b

Second, TGI and TAS assert that "courts from New York and around the country hold that course of performance and course of dealing should not be used to determine whether a contract exists or was created between parties." (Post-Hr'g Br., ECF No. 26, PageID.1072.)  TGI and TAS then cite several cases from New York and elsewhere purporting to support this proposition.  These cases fall generally into two buckets: (1) Cases in which a court held that a prior course of dealing between the parties is not sufficient to form or modify a contract under the UCC;[13] and (2)

---

[13] *See In re CFLC, Inc.*, 209 B.R. 508, 510 (B.A.P. 9th Cir. 1997), aff'd, 166 F.3d 1012 (9th Cir. 1999) ("Course of dealing evidence cannot create the agreement, but it may supplement the agreement by providing evidence of the parties' intentions."); *A.P.S., Inc. v. Standard Motor Prod., Inc.*, 295 B.R. 442, 444 (D. Del. 2003) ("A prior course of dealings between the parties is a tool for interpreting existing contracts and may not be used to establish contract formation.") (citation omitted); *Cherry River Music Co. v. Simitar Ent., Inc.*, 38 F.Supp.2d 310, 311 (S.D.N.Y. 1999) ("While industry custom and usage or a prior course of dealing between the parties is relevant to determining the meaning of a contract, it cannot create a contract where there has been no agreement by the parties.) (internal quotation marks omitted); *BAE Sys. Ordnance Sys., Inc. v. El Dorado Chem. Co.*, 2018 WL 1403899, at *1 (W.D. Ark. Mar. 20, 2018) ("In the present case, it is undisputed that BAE and Defendant failed to execute a written agreement regarding the supply of NGMA to the Radford

Cases in which a court held that extrinsic evidence cannot modify the express terms of a contract under the UCC's parol evidence rule.[14]  Neither bucket of cases clearly establishes as a matter of New York law that TK, TAS, and TGI could not have formed a contract through their conduct.

Take the first bucket of cases.  Only three involve New York law, and none of those cases precludes the possibility that the three parties here could have formed a contract through their conduct.  In *A.P.S., Inc. v. Standard Motor Prod., Inc.*, for example, the court rejected the argument that a course of dealing under a prior (inoperative) contract between the parties operated as a waiver or modification to provisions in the operative contract that governed the parties' dispute.  *See* 295 B.R. at 455-56.  In *Cherry River Music Co. v. Simitar Ent., Inc.*, an alleged copyright infringer asserted that a copyright holder was estopped from obtaining an injunction

---

Plant. Because of this fact, the parties' course of dealing cannot be used to create a contract."); *Hector, Inc. v. United Sav. & Loan Ass'n*, 741 P.2d 542 (Utah 1987) ("[E]vidence of a course of dealing and industry usage and custom does not suffice to create a whole agreement, especially when the agreement must be in writing to satisfy the statute of frauds."); *see also Feinberg v. Federated Dep't Stores*, Inc., 832 N.Y.S.2d 760, 761 (N.Y. Sup. Ct. 2007) (recognizing that course of dealing evidence may be considered when determining meaning of agreement).

[14]*See Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1039 (6th Cir. 1990) ("The UCC precludes admission of the extrinsic statements because . . . the Agreement clearly appears to have been intended as an exclusive and complete statement; and . . . the [proffered] evidence would not merely explain and supplement, but would tend to contradict the written agreement.") (internal quotation marks omitted); *Nw. State Bank of Luverne v. Gangestad*, 289 N.W.2d 449, 450 (Minn. 1979) ("[T]he maker of a promissory note is barred from showing an agreement contrary to the terms of the note by the parol evidence rule.").

against the alleged infringer because it was common in their industry for copyright holders to provide licenses after (allegedly infringing) use had already occurred. *See* 38 F.Supp.2d at 319.  In the portion of *Cherry River* cited by TGI and TAS, the court merely noted that a prior course of dealing or industry custom cannot form a contract – an argument that the alleged infringer did not advance and had expressly disclaimed. *See id.*  Indeed, there was no evidence or claim in *Cherry River* that the parties had entered into a contract through their conduct.  Instead, the infringer claimed only such evidence was relevant to the reasonableness of its actions – a point which the court rejected. *See id.* at 319-20.  Finally, in *Feinberg v. Federated Dep't Stores, Inc.*, the court held merely that course of dealing and course of performance evidence is relevant to the interpretation of a contract. *See* 832 N.Y.S.2d at 761.  The Court notes that none of these cases bear any meaningful resemblance to the circumstances here.  And, even more critically, none of them foreclose the argument that parties may form a contract through their conduct – as expressly permitted by the NY UCC and as TK alleged here.

The second bucket of cases likewise fails to clearly establish as a matter of New York law that the parties here could not have formed a contract through their conduct.  None of these cases involve New York law.  Nor do they directly speak to whether the conduct of the parties here was sufficient to form a contract.  The courts in the second bucket of cases addressed whether a party could prove a modification

of a fully-integrated contract through the admission of parol evidence. The courts held that they could not. But the courts did not squarely address whether two parties to a fully-integrated contract (here, TK and TAS, as signatories to the LTA) could, through conduct and otherwise, form a new contract with a third party that is not a party to the integrated contract (here, TGI). Thus, these cases do not compel the conclusion that TK, TAS, and TGI could not have formed a contract through their conduct.

Simply put, none of the cases cited by TGI and TAS clearly establish that it would have been patently erroneous as a matter of New York law for the Arbitrator to have concluded that (1) TK, TAS, and TGI, through their conduct, formed a new contract that included (but was not limited to) the terms of the LTA, (2) TGI and TAS both breached that contract, and (3) TGI and TAS could be held jointly and severally liable for that breach.

**c**

Third, TGI and TAS argue that the "Statute of Frauds also precludes the creation of any contract between [TGI] and TK." (Post-Hr'g Br., ECF No. 26, PageID.1077.) But TGI and TAS have failed to conclusively make that showing under New York law.

The Statute of Frauds under the NY UCC, § 2-201(1), provides that:

> [A] contract for the sale of goods for the price of $500 or
> more is not enforceable by way of action or defense unless

25

> there is some writing sufficient to indicate that a contract
> for sale has been made between the parties and signed by
> the party against whom enforcement is sought or by his
> authorized agent or broker.

As the text of the statute makes clear, the entire contract between the parties need not be in writing. The statute requires only that "there is *some writing* sufficient to indicate" that the contract has been formed. NY UCC § 2-201(1) (emphasis added).

Here, it is at least plausible that TK's allegations and evidence satisfied the Statute of Frauds. TK alleged that TGI and TAS and TK had a contract that was, in part, "evidenced by their written words[.]" (Arb. Demand, ECF No. 12-6, PageID.126.) More importantly, TK introduced at the arbitration hearing numerous writings exchanged between TK, TAS, and TGI, and those writings reflected transactions among the parties. (*See* fn.10, *supra* and accompanying text.) TGI and TAS have not cited any cases in which a court has found writings like these insufficient to satisfy the NY UCC Statute of Frauds. They have thus failed to show that the Arbitrator could not rationally have concluded that the contract alleged by TK satisfied the Statute of Frauds.

### d

Fourth, TGI and TAS argue that the Arbitrator manifestly disregarded corporate law by holding TGI, the parent company, liable for breaches of contract by TAS, its subsidiary. (*See* Mot. to Vacate, ECF No. 14, PageID.526-538.) TGI

and TAS insist that the Arbitrator had no basis on which to hold TGI liable because TK did not plead or prove any basis for piercing TGI's corporate veil.

This argument does not carry the day because, as explained in detail above, the Arbitrator could have found *both* TGI *and* TAS were parties to the contract at issue and that both breached the contract. Under this plausible theory, the Arbitrator could have held TGI liable for breach of contract irrespective of whether TK established a basis on which to pierce TGI's corporate veil. In short, even if TK presented no evidence to warrant veil piercing, that would not necessarily mean the Arbitrator manifestly disregarded the law by holding TGI liable for breach of contract.

### e

Finally, the primary case relied upon by TGI and TAS in support of their argument that the Arbitrator manifestly disregarded the law, *Coffee Beanery, Ltd. v. WW, LLC*, 300 F. App'x 415, 418 (6th Cir. 2008), actually underscores the insufficiency of their manifest disregard showing in this case. The arbitration at issue in *Coffee Beanery* concerned a dispute between a coffee company and one of its Maryland franchisees. *See id*. at 416. The franchisee argued to the arbitrator that, *inter alia*, the company had failed to disclose in its offering materials that one of its officers had been convicted of grand larceny. *Id.* at 421. The franchisee argued that the company's non-disclosure constituted misrepresentation and a violation of the

27

Maryland Franchise Act (the "MFA"), and that the company was therefore liable to the franchisee for damages. *See id.* at 414-417.  The MFA required that franchisors disclose in their offering materials "whether any person identified in the [offering] prospectus has been convicted of a felony . . . if the felony or civil action involved fraud, embezzlement, fraudulent conversion, or misappropriation of property." Md. Bus. Reg. Code § 14-216(8)(i).  The company did not dispute that the MFA governed the parties' franchise relationship, nor that the officer had failed to disclose the grand larceny conviction; instead, it insisted that grand larceny was not a conviction it had to disclose under the MFA. *Coffee Beanery*, 300 F. App'x at 421.

The arbitrator found for the company. *Id.* at 420.  In his reasoned award, he concluded that the company "was not required to disclose to [the franchisee] that [the company's officer] has a felony conviction for grand larceny as it [was] not the type of felony conviction subject to disclosure." *Id.*

The Sixth Circuit held this was a manifest disregard of the MFA. *Id.* at 419. It first noted that the issue of whether the MFA required disclosure of a grand larceny conviction was a "pure question of law" and that there were "no facts in dispute regarding this issue." *Id.* at 420.  It then concluded that the arbitrator got this purely legal question dead wrong.  It reasoned that "[t]he language of [the MFA] could not be any more clear: all persons identified in the offering prospectus must disclose any prior felony so long as it involves some 'misappropriation of property,' which by

definition would include a conviction for grand larceny, regardless of the conduct giving rise to the conviction." *Id.* Accordingly, the court held the arbitrator's finding that the MFA *did not* require the company to disclose the grand larceny conviction "fl[ew] in the face of" the Maryland statute. *Id.* Simply put, the Sixth Circuit found a manifest disregard for the law where the arbitrator's decision directly and irreconcilably contradicted the unambiguous language of the controlling statute – where there was no room for plausible disagreement on the question at issue.

That is not the case here. TGI and TAS have not identified a black-and-white legal rule – established by binding New York authority – that compelled the Arbitrator to reject TK's contention that all three parties here formed a contract through their conduct and writings, that both TGI and TAS breached that contract, and that TGI and TAS could be held jointly and severally liable for the breach. Instead, TGI and TAS urge the Court to vacate the award based upon cases (1) interpreting provisions of the NY UCC that do not directly address the contract-formation-by-conduct theory that the Arbitrator could have adopted and/or (2) that did not construe or interpret the NY UCC. The contrast between the authority cited by TGI and TAS falls far short of the high bar applied in *Coffee Beanery* and confirms that TGI and TAS have failed to establish a manifest disregard for the law.

**3**

For the same reasons as provided above, the Court also declines to vacate the Damages Component of the Award under the "exceeding powers" provision of the FAA, 9 U.S.C. § 10(a)(4). That section permits vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In at least one case, the Sixth Circuit has suggested that "[a]rbitrators exceed their power when they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 688 (6th Cir. 2007).

Here, however, for all the reasons that TGI and TAS have failed to demonstrate that the Arbitrator acted in manifest disregard of the law, they likewise fail to show that the Arbitrator acted "in contravention of controlling principles of law" in issuing the Damages Component of the Award. Thus, the Court concludes there is no basis for vacating this component of the Award under § 10(a)(4).

**B**

The Court next turns to the portion of TGI's and TAS's Motion to Vacate in which they seek vacatur of the Delivery Component of the Award. While they sought that relief in their written motion, at the hearing on the motion before the Court, their attorney indicated that they do not want the Court to vacate the Delivery

Component if the Court leaves intact the Damages Component. Counsel acknowledged that if the Delivery Component is not vacated – and if TGI and TAS are therefore going to have to pay money to TK for the Obsolete Inventory – then TGI and TAS would want to retain the inventory and sell it for whatever the market will bear (or use it for some purpose). For all of the reasons explained above, the Court has decided not to vacate the Delivery Component and thus, consistent with the position of TGI's and TAS's counsel at the hearing, the Court will not vacate the Delivery Component of the Award.[15]

## C

For all the foregoing reasons, the Court **DENIES** TGI's and TAS's motion to vacate the Award (ECF No. 14).

## IV

Having found no basis for vacating the Arbitrator's Award, the Court turns next to TK's motion to confirm the Award. The FAA provides as follows with respect to confirming arbitral awards:

---

[15] There may also be some question as to whether the request to vacate the Delivery Component is moot. TK reports to the Court that it has now completed delivery of the Obsolete Inventory to TGI and TAS, as directed by the Arbitrator. (*See* Supp'l Resp. Br., ECF No. 23, PageID.890.) Thus, the actions compelled by the Delivery Component – TK's delivery of the Obsolete Inventory and acceptance of that inventory by TGI and TAS – have already occurred. Under these circumstances, it is not clear that vacating the Delivery Component would have any effect on the parties.

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected[.]

9 U.S.C. § 9.  Here, the Court's Stipulated Arbitration Order provided that "this Honorable Court will enter a final judgment in this civil action in accordance with the Arbitrator's award, subject to the terms of the Federal Arbitration Act, 9 U.S.C. 1 *et seq.*" (Stip. Arb. Order, ECF No. 10, PageID.32.)  Accordingly, because the Court has concluded that there is no basis to vacate, modify, or correct the award, it is required to confirm the award. *See* 9 U.S.C. § 9; *Barcume v. City of Flint*, 132 F.Supp.2d 549, 555 (E.D. Mich. 2001).

## V

Finally, the Court turns to the parties' dispute as to pre-judgment interest.  TK has requested pre-judgment interest dating back to the filing of its Complaint. (*See* Mot. to Confirm, ECF No. 12, PageID.49.)  TGI and TAS counter that, when an action is submitted to arbitration, "the accrual date for any statutory pre-judgment interest is the date of the award," rather than the date of the Complaint. (*See* Mot. to

Vacate, ECF No. 14, PageID.540, *quoting Urban Assocs., Inc. v. Standex Elecs., Inc.*, 2012 WL 5897165, at **1-2 (E.D. Mich. Nov. 21, 2012).)

The Court agrees with TGI and TAS.  As the Michigan Supreme Court noted, "[t]he decision whether to award preaward, prejudgment interest as an element of damages is reserved as a matter of the arbitrator's discretion." *Holloway Const. Co. v. Oakland Cty. Bd. of Cty. Rd. Comm'rs*, 543 N.W.2d 923, 927 (Mich. 1996).  Here, the Arbitrator did not award pre-award, pre-judgment interest.  Thus, under *Holloway*, pre-award interest is not required.

TK counters that the situation here is distinguishable from that addressed in *Holloway* because these proceedings began as a civil action and were only later submitted to arbitration.  However, TK has not cited any authority in support of its contention that the rule in *Holloway* does not apply under these circumstances.  Accordingly, the Court declines to award pre-judgment interest dating back to the date of the Complaint.

## VI

For all of the reasons explained above, the Court **DENIES** TGI's and TAS's motion to vacate the Award (ECF No. 14).  Because there is no basis to vacate the Award, the Court thus **GRANTS** TK's motion to confirm the Award (ECF No. 12) and **CONFIRMS** that award.  Finally, the Court (1) **DENIES** TK's request for pre-judgment interest dating back to the filing of the Complaint and instead (2)

**AWARDS** TK pre-judgment interest dating back to the entry of the Award: June 4, 2021.  The Court directs TK to submit a proposed judgment reflecting the Court's ruling described in this order.  Before submitting the proposed judgment, TK shall seek approval from TGI and TAS, as to the form only, of the proposed judgment, and if such approval is granted, TK shall so indicate on the proposed judgment.

      **IT IS SO ORDERED**.

                        s/Matthew F. Leitman
                        MATTHEW F. LEITMAN
                        UNITED STATES DISTRICT JUDGE

Dated:  January 26, 2022

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 26, 2022, by electronic means and/or ordinary mail.

                        s/Holly A. Ryan
                        Case Manager
                        (313) 234-5126