IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THYSSENKRUPP MATERIALS,
LLC,

        Plaintiff,

v.

TRIUMPH GROUP, INC. and
TRIUMPH AEROSTRUCTURES, LLC,

        Defendants.

Case No. 4:20-cv-11087-MFL-EAS
District Judge Matthew F. Leitman
Magistrate Judge Elizabeth A. Stafford

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL WITHOUT ANY BOND

Plaintiff thyssenkrupp Materials, LLC submits the following Response and Brief in Opposition to Defendants' Motion requesting a stay of execution on the judgment in this matter without posting any bond or other security (ECF No. 33).

## RESPONSE IN OPPOSITION

Plaintiff opposes Defendants' extraordinary request that this Court deviate from Rule 62(b)'s requirement of a bond or other acceptable security in order to stay execution on the judgment pending appeal. As set forth in the following Brief in Opposition, no "extraordinary circumstances" exist here that could possibly justify Defendants' request to waive the bond requirement of Rule 62(b). Defendants can obtain a further stay, of course, by posting a full supersedeas bond as required by law. This Court should deny Defendants' motion for a stay without any bond.

# BRIEF IN OPPOSITION

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Should this Court enforce Rule 62(b)'s requirement of a full appeal bond and deny Defendants' motion requesting an additional stay – *without posting any bond or security at all* – on the execution of the judgment pending appeal, when Defendants have not demonstrated any "extraordinary circumstances" that might justify deviating from the bond requirement under Rule 62(b) and no such "extraordinary circumstances" exist to support Defendants' request?

Plaintiff says "Yes"

Defendants say "No"

## CONTROLLING AUTHORITIES

Fed. R. Civ. P. 62(b).

"[B]ecause of [Rule 62(b)'s] dual protective role, a full supersedeas bond should almost always be required [and …] Courts have found it appropriate to dispose of the bond requirement only in 'extraordinary circumstances.'" *Dubuc v. Green Oak Township*, 2010 U.S. Dist. LEXIS 106556 *3 (E.D. Mich. Oct. 1, 2010).

The moving party bears the burden to "objectively demonstrate the reasons for such a departure" and of proposing "a financially secure plan for maintaining that same degree of solvency during the period of an appeal." "Ideally, losing parties will always have sufficient funds to pay the award, but if this fact alone were enough to waive the bond requirement, the bond requirement would essentially be a nullity." *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 353 (E.D. Mich. 1998).

"[E]ven corporations with millions or billions of dollars in annual revenues cannot escape the full bond requirement, even for much smaller judgments than the one at issue here." *Allied Erecting & Dismantling Co. v. United States Steel Corp.*, 2016 U.S. Dist. LEXIS 36263, *45-47 (N.D. Ohio, March 21, 2016).

**Background and Introduction**

In summary, Triumph plainly continues to do everything it can to try to avoid its agreement to honor and abide by the arbitration award in this matter. In its most recent attempt to do so, Triumph asks this Court to grant Triumph's extraordinary request to deviate from Rule 62(b) and stay execution of the judgment entered in this matter pending appeal without posting any bond or security of any kind.

The filing of this case was preceded by years of protracted delay by Triumph and Triumph's persistent refusal to honor the parties' agreements and pay what was due, when it was due, during roughly ten years of Plaintiff's acquisition and inventory management of specialized aerospace aluminum on behalf of Triumph. Thereafter, Plaintiff commenced this civil action on May 4, 2020 (ECF No. 1).

After this civil action was filed, Plaintiff and Defendants entered into an "Agreement Concerning AAA Arbitration" effective as of June 17, 2020 (ECF No. 12-4, Page ID 66-71). On June 17, 2020, this Court entered a Stipulated Order Concerning Arbitration (ECF No. 10) which stayed the case pending the issuance of an arbitration award.

On April 16, 2021, following a five day arbitration trial, the arbitrator issued an award (ECF No. 12-2, Page ID 57-58). In essence, the arbitrator awarded Plaintiff $2,878,831.17 in "monetary damages" (a portion of the total requested) and ordered

under the heading "specific performance" that Plaintiff deliver and Triumph accept all of the at-issue material, priced at more than $3,500,000.00.

TK moved for judgment confirming the award on April 20, 2021 (ECF No. 12). Triumph, however, immediately commenced a campaign to attempt to frustrate and avoid the award, which necessitated additional proceedings before the arbitrator and significant additional costs for the Plaintiff. On May 14, 2021, Triumph also filed an opposition to Plaintiff's motion to confirm the award and enter judgment and a separate motion to vacate the award (ECF No. 14 and 15).

Plaintiff, on the other hand, has fully abided by the award and delivered all of the material, priced at more than $3.5 Million, to Triumph pursuant to the arbitrator's initial award and subsequent orders. Triumph received, accepted, and retains to this day all of the material, which again, was priced at more than $3.5 Million. To this day, Triumph has not paid one penny to the Plaintiff for any of that material.

On November 16, 2021, the Court held a hearing on Plaintiff's motion to confirm and enter judgment and Defendants' motion to vacate the award. On January 26, 2022, the Court issued its opinion and order confirming the award and denying Triumph's motion to vacate it (ECF No. 27). This Court's thorough and detailed decision was consistent with the facts of this case and the applicable law. (*Id.*).

On January 28, 2022, the Court entered judgment (ECF No. 28). Twenty eight days later, Triumph filed a notice of appeal (ECF No. 31). On February 28, 2022, a

day after the 30-day automatic stay expired under Rule 62(a), Triumph filed a motion requesting an additional stay, pending appeal, and without posting any bond or security of any kind (ECF No. 33). The Court should deny this extraordinary request.

## Applicable Authorities and Arguments

Under Rule 62, execution on the judgment was automatically stayed for 30 days following entry of the judgment. As a result, Triumph already obtained an effective "stay" from April 16, 2021 (when the award was issued) through February 27, 2022 (when the automatic stay under Rule 62 expired). In addition to the 30 day automatic stay under Rule 62(a):

> Under Federal Rule of Civil Procedure 62(b), a litigant may obtain a stay of execution of a judgment pending appeal "by providing a bond or other security." A stay of a monetary judgment issues as a matter of right under the rule when a supersedeas bond is posted and is approved by the court.

*Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 2021 U.S. Dist. LEXIS 74553, *4 (E.D. Mich. April 19, 2021) (*citing Arban v. West Publ'g Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) and *Am. Mfrs. Mut. Ins. Co. v. Am. Broad. Paramount Theaters, Inc.*, 87 S. Ct. 1, 3, 17 L. Ed. 2d 37 (1966)). While the bond requirement can be waived, a full supersedeas bond is almost always required:

> When considering a motion brought pursuant to Rule 62, the Court is mindful of the rationale underlying the rule itself. The framework of Rule 62(d) [now Rule 62(b)] represents a balancing of both parties' interests, in that it preserves the status quo while also protecting the appellee's rights. *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979). Rule

6

> 62(d) permits an appellant to obtain a stay "to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal." *Poplar Grove*, 600 F.2d at 1191. However, to preserve this right, the appellant must forego the use of the bond money during the appeal period.
>
> For the appellee, Rule 62(d) effectively deprives him of his right to enforce a valid judgment immediately. Consequently, the appellant is required to post the bond to provide both insurance and compensation to the appellee. The supersedeas bond protects the non-appealing party "from the risk of a later uncollectible judgment" and also "provides compensation for those injuries which can be said to be the natural and proximate result of the stay." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988), *Moore v. Townsend*, 577 F.2d 424, 427 (7th Cir. 1978) (*citing Weiner v. 222 East Chestnut Corp.*, 303 F.2d 630, 634 (7th Cir. 1962)). **Therefore, Rule 62(d) establishes not only the appellant's right to a stay, but also the appellees right to have a bond posted. Because of Rule 62(d)'s dual protective role, a full supersedeas bond should almost always be required.** *Poplar Grove*, 600 F.2d 1189, 1190 (5th Cir. 1979).
>
> . . . Although Courts generally require that a full bond be posted to obtain a stay pursuant to Rule 62(d), a court may, in its discretion, modify or even waive the full bond requirement. *Townsend v. Holman Consulting Corporation*, 929 F.2d 1358, 1376, 1990 U.S. App. LEXIS 25913, *24 (1991); Federal Prescription Service, Inc., 205 U.S. App. D.C. 47, 636 F.2d 755, 758 (D.C. Cir. 1980). **However, should a court choose "to depart from the usual requirement of a full security supersedeas bond . . . it should place the burden on the moving party to objectively demonstrate the reasons for such a departure."** *Poplar Grove Planting and Refining, Co., v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979). The opposing party has no obligation to introduce evidence to the contrary.

*Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 353, 1998 U.S. Dist. LEXIS 13140,

*5-6, 12-13 (E.D. Mich. August 21, 1998) (emphasis added).

7

Like the Defendant in the *Hamlin* case, Triumph seeks an exception from the bond requirement merely by claiming that it has sufficient funds to satisfy the judgment – this is not enough:

> In this case, Defendants' only argument is that readily available funds exist to satisfy the judgment, and that part of the judgment will be satisfied by an insurance company which possesses funds in excess of the entire judgment. However, even if Defendants demonstrated the existence of funds in excess of the judgment, waiving the bond on this factor alone ignores the dual protections Rule 62(d) is designed to provide the appellee. Waiving the bond requirement would deprive Mr. Hamlin of his right to execute the judgment immediately, without providing him the protection to which he is entitled. Rule 62(d)'s bond requirement serves a substantial function in balancing the parties' interest and is not a mere formality that should be waived simply because the losing party has adequate funds to satisfy the judgment. Ideally, losing parties will always have sufficient funds to pay the award, but if this fact alone were enough to waive the bond requirement, the bond requirement would essentially be a nullity.

*Hamlin*, 181 F.R.D. at 353.

"[B]ecause of [Rule 62(b)'s] dual protective role, a full supersedeas bond should almost always be required [and] Courts have found it appropriate to dispose of the bond requirement only in 'extraordinary circumstances.'" *Dubuc v. Green Oak Township*, 2010 U.S. Dist. LEXIS 106556 *3 (E.D. Mich. October 1, 2010). Triumph must establish that "there are 'extraordinary circumstances' that justify deviating from the bond requirement." *Id*. at *5. "The burden is 'on the moving party to objectively demonstrate the reasons for such a departure. It is not the burden of the judgment creditor to initiate contrary proof.'" *United States v. Church*, 2019 U.S.

8

App. LEXIS 22620, *2 (6th Cir. 2019) (*quoting Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)).

Triumph's motion fails to identify any "extraordinary circumstances" that could possibly warrant departure from the customary bond requirement in this case. Indeed, as the only alleged support for their extraordinary request, Defendants submit just one lone document: an unverified copy of a Form 10-Q filing, for the quarter ending December 31, 2021, which purports to summarize certain unaudited financial records of Triumph Group, Inc. (relative to just one of the two Defendants, both of which are jointly and severally liable for the entire judgment) and only for the nine month period ending December 31, 2021. (ECF No. 33-1).

Contrary to the unverified contentions in Defendants' motion, Triumph Group, Inc.'s gross revenues and available cash equivalent assets as of December 31, 2021, in a vacuum, establish little or nothing about Defendants ability to pay now, and even less about their ability to pay in the future. While the lone document offered by Defendants does suggest that Triumph Group, Inc. had gross sales revenue of approximately $1 Billion during the nine month period ending December 31, 2021, that document also indicates, for example, that:

- Triumph Group, Inc. experienced a net operating loss of Thirty Two Million, One Hundred Eighty-Three Thousand Dollars ($32,183,000) during that same nine month period ending December 31, 2021 (Page ID 1211).

9

- Triumph Group, Inc. also experienced a net operating loss of Three Hundred Seventy Seven Million, Three Hundred Ninety-One Thousand Dollars ($377,391,000) during the nine month period ending December 31, 2020 (Page ID 1211).

- The Triumph Group, Inc. "assets" described as "cash and cash equivalents" dropped significantly (from $589,882,000 to just $206,139,000) during the nine months between March 31, 2021 and December 31, 2021 – a decrease of roughly 65% in just those nine months (Page ID 1210).

- The Triumph Group, Inc. "total current liabilities" were $563,160,000 and total current and long-term "liabilities" were $2,564,577,000 – as of December 31, 2021, Triumph Group, Inc. had over $563 Million in current liabilities and more than $2.5 Billion in total liabilities (Page ID 1210).

In other publicly available documents (released as part of Triumph Group, Inc.'s "Third Quarter FY'22 Earnings Conference Call"), Triumph Group, Inc. states: "We also use free cash flow as a key factor in planning for and consideration of strategic acquisitions and the repayment of debt." (Ex A). Importantly, Triumph Group Inc. experienced negative "free cash flow" of more than $185 Million during the nine month period ending December 31, 2021 – meaning Triumph's operating expenses and capital expenditures exceeded the cash generated from its operations by more than $185 Million during that nine month period. (*Id.*). Triumph Group, Inc.

10

projects that its needs for cash will exceed the cash generated from its operations by $150 Million during its 2022 fiscal year. (*Id.*).

Given Triumph's lack of available free cash flow from its operational revenue (projected to be negative by $150 Million during its 2022 fiscal year) and Triumph's significant liabilities ($563 Million in current liabilities and $2.5 Billion in total liabilities as of December 31, 2021), the Defendants' ability to satisfy the judgment in full upon the conclusion of its appeal is far from certain and not beyond question.

Defendants cite *Arban v. West Publ'g Corp.*, where the District Court waived the bond requirement for West Publishing Group which demonstrated revenues of "approximately 2.5 billion" after the district court entered judgment of just $225,067. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). Contrary to Defendants' claims, this case is not "exactly like *Arban*" at all. In contrast to *Arban*, the judgment in this matter is in the principal amount of $2,886,918.67, plus additional interest and costs. The judgment here is more than ten times the judgment at issue in the *Arban* matter. And, the Defendants here claim to have only 40% of the defendant's claimed revenue in the *Arban* matter.

Furthermore, unlike the *Arban* matter, the alleged support submitted by these Defendants (ECF No. 33-1; Page ID 1208-1217) reflects that Triumph Group, Inc. declared operating losses of over $377 Million during the nine month period ending December 31, 2020, more than $32 Million in operating losses during the nine

11

months ending December 31, 2021, more than $2.5 Billion in total liabilities as of December 31, 2021, and a 65% decrease in cash and cash equivalent assets over the nine month period ending December 31, 2021 (Page ID 1210 and 1211).

Other Courts in this District have distinguished and rejected reliance upon *Arban* (just like this Court should do here):

> Defendant's reliance on *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400, 409 (6th Cir. 2003) is unpersuasive here. The total amount at issue in that case - including judgment, interest, attorney's fees and costs - barely exceeded $225,000, while West's revenue was 'approximately [$]2.5 billion.' *Id*. at 400, 409. Here, the amount at issue is $48,770.25, while Vaive's yearly income averages between $2 and $2.5 million. *See, e.g.*, ECF 56, PgID 1002. The claimed fees make up a far higher percentage of Vaive's overall revenue and the case is distinguishable on Vaive's burden to prove that it should be entitled to a stay without bond. Vaive also fails to persuade the Court that it should reduce the amount of bond. Courts generally require a 'full security supersedeas bond' and the burden is 'on the moving to party to objectively demonstrate' why the Court should depart from the full requirement. *Hamlin*, 181 F.R.D. at 353. Vaive has not demonstrated why the Court should not require a full bond to stay the case, and the Court will therefore deny Vaive's motion to stay proceedings without bond.

*Murphy v. Vaive Wood Prods. Co.*, 2019 U.S. Dist. LEXIS 234031 at *5-6 (E.D. Mich. Nov. 22, 2019).

Defendants also cite *Contract Design Group, Inc. v. Wayne State Univ.*, 2014 U.S. Dist. LEXIS 148859 (E.D. Mich., Oct. 20, 2014), where the District Court granted Wayne State University's motion to stay of execution on a judgment pending appeal without a bond. Unlike the Defendants in this case, Wayne State submitted an affidavit of its Vice President of Finance and Businesses Operations, Treasurer

and Chief Financial Officer attesting to the fact that "there is currently $183,500,000.00 in unrestricted funds available to Wayne State University" and "that Wayne State will pay the judgment, fees and expenses if affirmed on appeal." *Id*. at *6-7. The District Court also emphasized that: "Further, Wayne State has promised to 'make every effort to expedite payment upon affirmance of the judgment' and has noted that 'such payment would of course include interest on the judgment and fees, as has been ordered by the Court, that will compensate plaintiffs for the time it will take for Wayne State University to process the payment it has promised to make.'" *Id*. at *9-10.

The Court in the *Contract Design* matter concluded that it had received "the requisite amount of information to support granting a stay without requiring a bond because Wayne State has, 'demonstrated the existence of previously appropriated funds, available for the purpose of paying judgments without substantial delay or other difficulty.'" *Id*. at *9. Triumph presents no such verified evidence; Triumph has no such specially appropriated funds (Wayne State had earmarked funds of $185 Million relative to a $550,000 judgment); and Triumph makes no sworn promises of prompt payment here.

Other District Courts within the Sixth Circuit have recognized that the bond requirement should not be waived even for large corporations with "millions or billions of dollars in annual revenue" and a clear ability to pay:

13

> However, '[t]he requirement of a bond balances and protects the parties' interests and is not a mere formality that should be waived simply because [the judgment debtor] may have the financial wherewithal to pay the judgment if [it does] not prevail on appeal.' *Progressive Foods, LLC v. Dunkin' Donuts Inc.*, No. 1:07-cv-3424, 2011 U.S. Dist. LEXIS 45301, 2011 WL 1601335, at *3 (N.D. Ohio Apr. 27, 2011). **Thus, courts in this District generally decline to waive the full supersedeas bond requirement, even where a party clearly has the ability to pay.** *See, e.g., id.*; *Mengelkamp v. Lake Metro. Housing Auth.*, No. 11-cv-2589, 2012 U.S. Dist. LEXIS 173109, 2012 WL 6085084, at *2 (N.D. Ohio Dec. 6, 2012) (rejecting defendant's motion to waive the full bond requirement based on its ability to pay from its insurance coverage, reasoning that a stay without full bond 'may only be granted in the most extraordinary of circumstances'). **Indeed, numerous courts in this District have held that even corporations with millions or billions of dollars in annual revenues cannot escape the full bond requirement, even for much smaller judgments than the one at issue here.** *See, e.g., Progressive Foods*, 2011 U.S. Dist. LEXIS 45301, 2011 WL 1601335, at *2-3 (requiring Dunkin' Donuts to post a full supersedeas bond for a $236,000 judgment despite its assets in excess of $40 million and $119 million in annual net income); *Johnson*, 2008 U.S. Dist. LEXIS 26194, 2008 WL 918459, at *2 (requiring Cigna to provide a full bond in the amount of $270,000 despite the court's recognition that 'Defendant Cigna will likely have the ability to pay the judgment[]'); *Verhoff*, 2007 U.S. Dist. LEXIS 93312, 2007 WL 4303743, at *3 (denying Time Warner Cable's request to waive the full bond of $300,000 when it earned over $2.1 billion in the previous year). These cases demonstrate that even companies in significantly better financial condition than Allied, whose ability to pay the judgment after an appeal is much more uncertain, are not able to avoid the full bond requirement.

*Allied Erecting & Dismantling Co. v. United States Steel Corp.*, 2016 U.S. Dist. LEXIS 36263, *45-47 (N.D. Ohio, March 21, 2016) (emphasis added).

Importantly, Triumph's appeal here is simply an exercise in futility and further delay. The standard of review on an arbitration award by the District Court

is "one of the narrowest standards of judicial review in all of American Jurisprudence" and subject to the extremely deferential "clear error" standard of appellate review:

> In an appeal from a district court's decision declining to vacate or confirming an arbitrator's award, we review the district court's findings for clear error and its conclusions of law de novo. Review of an arbitration award 'is one of the narrowest standards of judicial review in all of American Jurisprudence.' Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error.

*Gunasekera v. War Mem. Hosp., Inc.*, 841 Fed. Appx. 843, 845 (6th Cir. 2021) (internal citations omitted).

Triumph's extraordinary request is also directly opposite to the overriding purpose of arbitration in the first place. "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Island Creek Coal Sales Co. v. Gainesville*, 764 F.2d 437, 441 (6th Cir. 1985). Allowing Triumph to further delay execution on the judgment entered on the arbitration award throughout the pendency of its futile appeal would defeat the purpose of arbitration, particularly after Triumph already obtained an effective stay after the award was issued of over ten months.

Furthermore, it would be patently unfair and contrary to any reasonable notion of equitable justice for Triumph to receive and retain $3.5 Million worth of material under the award, keep all of that material, not pay one penny for any of it, and then

15

obtain the extraordinary relief of this Court waiving the Rule 62 stay bond requirement during Triumph's futile appeal. After all, the arbitrator only ordered Triumph to pay $2.8 Million for over $3.5 Million worth of material. Triumph has all the material, yet has paid none of the money.

If the bond requirement were waived in a case such as this, it would nullify the text, purpose, and intent of Rule 62(b). Every company with significant gross revenues (regardless of operational costs and corresponding losses) would be exempt from the bond requirement.

Here, Plaintiff and Defendants are both large corporations. In any hypothetical scenario where Triumph actually succeeded in its appeal, and then succeeded in subsequent arbitration proceedings following a remand after the appeal, it is just as likely that Thyssenkrupp could pay any money back to Triumph as it is that Triumph could pay it to Thyssenkrupp following an appeal. Triumph has made no showing that Thyssenkrupp would be unable to do so here.

## **Defendants' Motion Should Be Denied**

In short, Triumph's motion (ECF No. 33) should be denied. Triumph can, however, obtain a further stay pending its futile appeal by posting a full supersedeas bond as required by Rule 62(b).

16

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Attorneys for Plaintiff: |
|  | DINSMORE & SHOHL LLP |
|  | */s/ Thomas H. Walters* |
|  | By:   Thomas H. Walters (P51413) |
|  | 900 Wilshire Drive, Suite 300 |
|  | Troy, Michigan 48084 |
|  | (248) 647-6000 |
| Dated: March 14, 2022 | tom.walters@dinsmore.com |

## PROOF OF SERVICE

I hereby certify that on March 14, 2022, I electronically filed the above document(s) and this Certificate of Service with the Clerk of the Court using the ECF system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case.

I DECLARE THAT THE FOREGOING STATEMENT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

/s/ *Thomas H. Walters*